UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

_____
                                    )
IN RE WAL-MART STORES, INC.         )   Master Docket No. 4:12-cv-4041
SHAREHOLDER DERIVATIVE              )
LITIGATION                          )
_____)
                                    )
This Document Relates to:           )
         ALL ACTIONS                )
_____)

## AMENDED ORDER

On November 20, 2012, the Court issued an Amended Order (ECF No. 68) staying and administratively terminating this consolidated action. The Court's Order is amended to reflect the correction of minor typographical errors. The Amended Order reads as follows:

Before the Court is Defendants' Motion to Stay the Entire Action and for Extension of Time to Respond to Complaint. (ECF No. 35).[1] Defendants request that this action be stayed pending the resolution of parallel actions in Delaware Chancery Court. Plaintiffs have filed a response (ECF No. 41), Defendants have filed a reply (ECF No. 47), and Plaintiffs have filed a sur-reply. (ECF No. 49). The parties have also filed multiple supplements to their briefs. (ECF Nos. 43, 44, 45, 60, 61, & 65). On September 6, 2012, the Court held a hearing on the motion where both parties submitted oral argument. The Court finds this matter ripe for consideration.

## BACKGROUND

This is a consolidated shareholder derivative action brought by Plaintiffs against current and former directors and officers of Wal-Mart.[2] Plaintiffs allege that these Defendants breached

---

[1] The Court has already addressed Defendants' request for an extension of time to respond. (ECF No. 46).
[2] The following cases make up this consolidated action: *John Cottrell v. Duke, et al.*, 4:12-cv-4041; *Louisiana Municipal Police Employees' Retirement Fund v. Scott, Jr., et al.*, 4:12-cv-4045; *Tuberville v.*

their fiduciary duties of loyalty, good faith, candor, and trust owed to Wal-Mart and all of its shareholders under Delaware law. (*Plaintiffs' Consolidated Complaint*, ECF No. 16). The allegations in the Complaint stem from an investigative report published in *The New York Times* on April 23, 2012. The report detailed a long-running bribery scheme involving Wal-Mart de Mexico ("Wal-Mex"), Wal-Mart's largest subsidiary. Plaintiffs allege that this bribery scheme was in violation of the Foreign Corrupt Practices Act ("FCPA"). Plaintiffs also allege that Defendants encouraged the illegal practices by ignoring them, covering them up, or hindering investigations. Plaintiffs state that Defendants knew about these illegal activities for years, deliberately suppressed the truth, and generally mismanaged the situation. Plaintiffs claim that these actions have damaged Wal-Mart monetarily and that Wal-Mart's goodwill and corporate image have been tarnished. Specifically, Plaintiffs' Consolidated Complaint alleges breaches of fiduciary duty, violations of Section 14(a) and 29(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and claims for contribution and indemnification against the Individual Defendants.

Plaintiffs are not the only group of Wal-Mart shareholders to make these specific claims against officers and directors of Wal-Mart. In addition to the six shareholder derivative suits that make up this consolidated action, seven derivative actions have been filed in the Delaware Court of Chancery and two derivative actions have been filed in Arkansas state court. Each of these suits is based upon the same reports and allegations set forth in the April 2012 *New York Times* article, and each of the actions claims breaches of fiduciary duty stemming from the alleged cover-up and mismanagement of the Wal-Mex bribery scheme.

---

*Duke, et al.*, 4:12-cv-4046; *Lomax v. Walton, et al.*, 4:12-cv-4047; *William Cottrell v. Duke, et al.*, 4:12-cv-4049; and *Richman v. Alvarez, et al.*, 4:12-cv-4069.

The procedural dispositions of these other derivative actions is worth noting. While the Court is not aware of precisely how the seven derivative actions are proceeding in the Delaware Court of Chancery, there are indications that they are moving forward in a consolidated manner. (ECF No. 44, Exh. A). One of the Arkansas state court actions, *Emory v. Duke, et al.*, 4:12-cv-5171, was removed to the Eastern District of Arkansas and subsequently transferred to this Court.[3] In the second Arkansas state court action, *Austin v. Walton*, No. CV-2012-201 (Pope County Circuit Court), a motion to stay, much like the motion currently before this Court, was filed by the Wal-Mart defendants. The Court has been informed that the motion was granted and that the state court action has now been stayed pending the resolution of the proceedings in the Delaware Court of Chancery. (ECF No. 65, Exh. 1).

Defendants now ask this Court to abstain from hearing this case and to stay it in its entirety so that the claims and issues involved may be resolved in the Delaware Court of Chancery.

## DISCUSSION

It is well-settled that, in the interest of "wise judicial administration" and the "conservation of judicial resources," a federal court may abstain from exercising jurisdiction over claims in favor of concurrent and parallel state proceedings when it is warranted by exceptional circumstances. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976). The threshold issue in *Colorado River* abstention analysis is whether the state and federal proceedings are parallel. *Fru–Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009). If the Court determines that the actions are parallel, it must then go on to determine whether "exceptional circumstances warrant abstention." *Id*. at 534.

---

[3] A similar motion to stay is pending in the *Emory* action. (4:12-cv-5171, ECF No. 4).

3

### A. Parallelism

The Court will first address *Colorado River* abstention's threshold requirement of parallelism between the state and federal proceedings. "[S]tate and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in both state and federal court." *Id*. When determining whether there is substantial similarity, the relevant question is whether there is a "substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id*. "While the standard is one of 'substantial similarity,' the proceedings need not be identical." *Calleros v. FSI Int'l, Inc.*, CIV. 12-2120, 2012 WL 4097832, at *3 (D. Minn. Sept. 18, 2012). The parallel nature of state and federal actions "cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Clark v. Lacy*, 376 F.3d 682, 686—87 (7th Cir. 2004).

As a preliminary matter, the parties do not dispute that this derivative action and the Delaware action are based upon the same series of events and alleged wrongdoings by Wal-Mart's management and board of directors. Each case is centered upon the allegations contained in a *New York Times* article detailing Wal-Mex's alleged bribery schemes and the subsequent mishandling of the situation by Wal-Mart representatives. There is also no dispute that the parties in the Delaware actions and this action are largely the same. Because these are derivative shareholder suits, Wal-Mart is the true party in interest in each case, even though each of these derivative actions has been brought by separate plaintiffs. Furthermore, each Defendant named in this federal action is also a Defendant in at least one of the Delaware actions. Finally, the claims in these state and federal derivative suits are substantially similar. Each of the complaints asserts that the defendants breached their fiduciary duties by allowing the alleged bribery to

4

occur, failing to investigate the allegations of bribery, and issuing misleading proxy statements to investors.

The only issue truly contested by the parties in this parallelism determination has to do with the existence of a 14(a) Exchange Act claim in this federal action. Because this Exchange Act claim is absent from the Delaware action and is subject to exclusive federal jurisdiction, Plaintiffs argue that the Delaware action will never be able to fully dispose of all claims that have been presented to this Court. For this reason, Plaintiffs contend that substantial similarity between the state and federal actions does not exist. The Court disagrees and finds that there is a substantial likelihood that the Delaware action will effectively dispose of Plaintiffs' Exchange Act claim.

Plaintiffs' Exchange Act claim states that Defendants violated section 14(a) by producing proxies that "materially misrepresented" the effectiveness of the board's supervision and oversight and its compliance with Wal-Mart's Statement of Ethics. (*Plaintiffs' Consolidated Complaint*, ECF No. 16, ¶ 288).[4] Importantly, the plaintiffs in the Delaware action have made similar claims regarding misstatements in Wal-Mart's proxies pursuant to Delaware law. (ECF No. 37, Exh. 6, ¶ 91; Exh. 7, ¶ 107; Exh. 9, ¶ 109).

In order to sustain a 14(a) disclosure claim under the Exchange Act, a plaintiff must show that there has been an omission of a "material fact" in the proxy. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Id*. Delaware common law also recognizes claims based upon misleading proxies, e.g., claims for breach of

---

[4] In addition to their 14(a) claim, Plaintiffs also include a request for damages under 29(b) of the Exchange Act. However, this 29(b) request relates only to a specific type of relief that Wal-Mart may be entitled to if there have been 14(a) violations. Specifically, 29(b) may allow any compensation paid to Defendants who have violated section 14(a) to be rescinded and/or voided by Wal-Mart. In other words, Plaintiffs' 29(b) request is wholly premised upon the substantive issues involved in their 14(a) claim.

fiduciary duty, and adheres to the same materiality standard that is imposed upon 14(a) claims by federal law. *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840, 846 (Del. 1987) ("In evaluating whether defendants satisfied their fiduciary duty of candor, the question is one of materiality…. An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."); *see also Int'l Jensen Inc. v. Emerson Radio Corp.*, 96 C 2816, 1996 WL 494273, at *4 (N.D. Ill. Aug. 27, 1996); *Calleros v. FSI Int'l, Inc.*, CIV. 12-2120, 2012 WL 4097832, at *4 (D. Minn. Sept. 18, 2012) (quoting *In re Novell, Inc. Shareholder Litig.*, Civ. A. No. 10-12076, 2012 WL 458500, at *8 (D. Mass. Feb. 10, 2012)) ("'Although federal disclosure law may not parallel…Delaware common law in every respect, both require proof that an alleged misstatement or omission was material. Crucially, the Delaware courts recognize the same standard of 'materiality' as the Supreme Court recognized for [Exchange Act] claims[.]'").

Plaintiffs' Exchange Act claim is, in essence, duplicative of the breach of fiduciary duty claims present in the Delaware action. Many courts, including one in this circuit, have held that federal and state actions are parallel under these circumstances due to the likelihood that the state action, while not exercising jurisdiction over the 14(a) claim, will effectively dispose of the 14(a) claim by adjudicating duplicative state law claims that have the same elements and carry the same evidentiary burdens. *See Calleros*, 2012 WL 4097832, at *4; *In''l Jensen Inc.*, 1996 WL 494273 at *4; *In re Novell*, 2012 WL 458500, at *8; and *McCreary v. Celera Corp.*, 11-1618 SC, 2011 WL 1399263, at *3 (N.D. Cal. Apr. 13, 2011). This Court is inclined to agree.

While the Delaware common law claims and the 14(a) claim "stem from different sources of law, [they] are substantially the same." *In re Novell*, 2012 WL 458500, at *8. Plaintiffs are essentially attempting to litigate the same claim under two similar causes of action.

6

*See Int'l Jensen Inc.*, 1996 WL 494273, at *4. Because both this Court and the Delaware Chancery Court would be required to determine whether Wal-Mart officers made material misrepresentations and/or omissions, the "disposition of the state claims is 'substantially likely' to dispose of the Exchange Act claims" in this Court. *Calleros*, 2012 WL 4097832, at *3.

In addition to the above-mentioned considerations, the court in *Novell* summarized very well what implications the doctrine of collateral estoppel might have on a plaintiff's Exchange Act claims that have been stayed in favor of a state court action:

> [A] decision by the Delaware court could provide a predicate for collateral estoppel of plaintiffs' 1934 Act claims…. As the Supreme Court noted in *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 383–84, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996): "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions… [and] said nothing to modify the background rule that where a state-court judgment precedes that of a federal court, the federal court must give full faith and credit to the state court judgment."
>
> There is no reason to believe that the Delaware Chancery Court will not fairly and completely adjudicate the facts underlying the plaintiffs' disclosure claims; notions of comity militate otherwise. While it is impossible to predict at this juncture the exact preclusive effect in this litigation of a judgment reached by the Chancery Court, any decision adverse to the plaintiff could moot or otherwise expedite disposition of plaintiffs' federal claims, while still protecting the parties' rights.

*In re Novell*, 2012 WL 458500, at *8 (internal citations omitted).

In sum, this Court is confident that Plaintiffs would have the opportunity to fully litigate the issues raised in their section 14(a) claim if this case were stayed in favor of the Delaware action. Therefore, this action and the Delaware action are parallel. The Court is aware that there are a number of courts that have arrived at the opposite conclusion when faced with this question of whether a federal action containing section 14(a) Exchange Act claims can be parallel to a state action. *See Harrison v. XTO Energy, Inc.*, 705 F. Supp. 2d 572 (N.D. Tex. 2010); *In re Comverse Tech., Inc. Derivative Litig.*, 06-CV-1849, 2006 WL 3193709 (E.D.N.Y. Nov. 2,

2006); *Oakland Cnty. Employee' Ret. Sys. v. Massaro*, 702 F. Supp. 2d 1012 (N.D. Ill. 2010); and *Krieger v. Atheros Commc'ns, Inc.*, 776 F. Supp. 2d 1053 (N.D. Cal. 2011). While the Court recognizes that many of these opinions are well-reasoned, the undeniable substantial similarity between the Delaware action and this federal action leads the Court to conclude that these are parallel actions under the principles and rationale set forth in *Colorado River*.

### B. The *Colorado River* factors

Because the Court has determined that this action and the Delaware action are parallel, we must now go on to consider whether abstention is appropriate in this case. "Six non-exhaustive factors have been developed to determine whether…exceptional circumstances warrant abstention." *Fru–Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). These factors are:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006)). "These factors do not provide a 'mechanical checklist,' but rather outline for district courts 'important factors [to] apply in a given case.'" *Calleros v. FSI Int'l, Inc.*, CIV. 12-2120, 2012 WL 4097832, at *4 (D. Minn. Sept. 18, 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

Because there is no res at issue in this case, this factor will not be addressed. The Court will address each of the other factors below.

### *1. Inconvenience of the federal forum*

Defendants, the parties requesting a stay in this case, do not appear to argue that abstention is warranted due to the inconvenience of this federal forum. Wal-Mart's corporate headquarters are located in the Western District of Arkansas, and there is nothing inherently inconvenient about litigating this action in this Court. Nor is there anything especially inconvenient about the Delaware Chancery Court as a forum, because Wal-Mart is incorporated in Delaware. Because both this Court and the Delaware Chancery Court are sufficiently convenient forums, this factor is neutral.

### *2. The threat of piecemeal litigation and protection of the parties' rights*

These two factors weigh in favor of abstention. The claims and parties in this action and the Delaware action are almost identical, and the issues involved overlap substantially. If this Court does not abstain, there will be separate judgments from two courts ruling on the same issues and applying the same bodies of law. The potential for duplicative efforts and inconsistent rulings is certainly present. *Calleros,* 2012 WL 4097832, at *5; *Giles v. ICG, Inc.*, 789 F. Supp. 2d 706, 713 (S.D. W. Va. 2011) ("[P]ermitting multiple courts to decide the same issues on whether the defendants breached their fiduciary duties…is judicial overkill, and harmful to all parties in this action. It would be unjust and unnecessary to impose potentially incompatible standards of conduct on the defendants.").

As discussed above, the Court is confident that the Delaware Chancery Court can fairly and completely adjudicate all of the issues underlying Plaintiffs' claims, including their section 14(a) Exchange Act claim.[5] There is no reason to believe that Plaintiffs' rights will not be protected.

---

[5] The Court also finds that the requests for relief in the Delaware action will adequately protect Plaintiffs' rights. Plaintiffs' section 29(b) Exchange Act request that any compensation paid by Wal-Mart to

### 3. *Whether state or federal law controls*

All of Plaintiffs' claims, with the exclusion of their Exchange Act claim, will require the interpretation and application of Delaware state law.[6] *See In re Citigroup, Inc. S'holder Derivative Litig.*, 964 A.2d 106, 118 (Del. Ch. 2009) (holding that the fiduciary duties of companies incorporated in Delaware are governed by Delaware law).

The Delaware Chancery Court "has a well-recognized expertise in the field of [its] corporation law," and the Court feels that the parties would benefit from the Delaware court's experience in applying its state's law and managing this type of litigation. *Giles*, 789 F. Supp. 2d at 713 (internal quotations omitted). Additionally, Chancellor Leo Strine, who is presiding over the duplicative actions in the Delaware Chancery Court, has explicitly stated his belief that this derivative litigation should move forward as one consolidated action in Delaware because issues of Delaware corporate law are strongly implicated. (ECF No. 44, Exh. A). Because Delaware law is controlling over Plaintiffs' claims, this factor weighs in favor of abstention.

### 4. *The progress of the federal action versus the state action*

The separate cases that make up this consolidated action were filed between April 25, 2012 and June 26, 2012. Plaintiffs' Consolidated Complaint was filed May 31, 2012. The separate actions that make up the consolidated Delaware action were filed between April 27, 2012 and June 18, 2012. Due to the close proximity of these filings, these actions are extremely similar in terms of progression and disposition. While there has been a Consolidated Complaint filed in this action, there has been no answer by Defendants. In sum, this federal action has not

---

Defendants who have violated section 14(a) be rescinded and/or voided is similar to requests for the disgorgement of profits, benefits, and other compensation that are sought in the Delaware action. (ECF No. 37-6, p. 27).

[6] As discussed previously, while Plaintiffs' Exchange Act claim is not governed by Delaware law, Delaware law does utilize the same materiality standard that applies to 14(a) claims under the Exchange Act.

progressed so far beyond the Delaware action that it should be given priority. Because both the federal action and the Delaware action are similar in disposition, this factor is neutral.

### 5. *Forum shopping considerations*

The bedrock of *Colorado River* abstention is the interest of wise judicial administration and the conservation of judicial resources. Therefore, when considering whether abstention is appropriate, it is important to consider whether a state or federal case has been filed "for a vexatious, reactive or tactical reason." *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 299 (8th Cir. 1995). In other words, it is necessary to consider whether this federal action, including its Exchange Act claim, was filed for the purpose of forum shopping.

Plaintiffs' separate derivative actions were filed in this Court shortly before, and shortly after, other duplicative derivative actions were filed in Arkansas and Delaware state courts. At the time Plaintiffs' separate actions were filed in this Court, only three of their six complaints contained an Exchange Act claim.[7] An Exchange Act claim is included in Plaintiffs' Consolidated Complaint, which was filed after many of the duplicative state actions had commenced. In the present motion, Plaintiffs' primary argument against a stay is premised on the fact that this Court has exclusive federal jurisdiction over Exchange Act claims and therefore should not abstain under any circumstances because the federal and state actions are not parallel. The Court has already dealt with Plaintiffs' arguments regarding its ability to abstain under these circumstances. However, it should be noted that Plaintiffs' position also raises forum shopping concerns.

---

[7] The three derivative actions that did include an Exchange Act claim in their original complaints were filed after state court derivate actions had commenced in Delaware. (*Tuberville v. Duke, et al.,* 4:12-cv-4046; *William Cottrell v. Duke, et al.* 4:12-cv-4049; and *Richman v. Alvarez, et al.*, 4:12-cv-4069).

11

Plaintiffs filed their Consolidated Complaint after complaints with extremely similar, if not identical, claims were filed in other courts. The only meaningful difference in the claims for relief found in Plaintiffs' Consolidated Complaint and the claims found in the Delaware complaints is the inclusion of an Exchange Act claim in this federal action. Furthermore, this Exchange Act claim is based upon the same facts, events, and allegations as the fiduciary duty claims contained in the Delaware complaints. Given these realities, the Court is concerned about the possibility that Exchange Act claims were included in Plaintiffs' Consolidated Complaint for purposes of gaining a tactical advantage, securing a separate federal forum, and avoiding consolidation with state actions. *See McCreary v. Celera Corp.*, 11-1618 SC, 2011 WL 1399263, at *5 (N.D. Cal. Apr. 13, 2011); *Krieger v. Atheros Commc'ns., Inc.*, 776 F. Supp. 2d 1053, 1060 (N.D. Cal. 2011).

Even setting these forum shopping considerations aside, *Colorado River* abstention is warranted in light of the other factors discussed above.[8] Because abstention is appropriate in this case, Defendants' Motion to Stay (ECF No. 35) should be and hereby is **GRANTED**. This action is **STAYED** and administratively terminated pending the resolution of the state-court actions in the Delaware Court of Chancery.

**IT IS SO ORDERED**, this 27th day of November, 2012.

                                                /s/ Susan O. Hickey
                                                Hon. Susan O. Hickey
                                                United States District Judge

---

[8] Even if this Court were to conclude that abstention was not appropriate under *Colorado River*, a stay of this case in favor of the Delaware action would be appropriate pursuant to this Court's inherent power to stay proceedings in the interest of controlling "the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The interests of judicial economy, coupled with the Delaware court's ability to hear the vast majority of Plaintiffs' claims and adequately protect Plaintiffs' rights, justifies a stay of this case pursuant to *Landis*. *See Calleros,* 2012 WL 4097832, at *5, n.8; *Sabbag v. Cinnamon*, 5:10-CV-02735-JF, 2010 WL 8470477 (N.D. Cal. Dec. 10, 2010).